IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MONICA CISNEROS | § | |
| | § | |
| V. | § | A-17-CV-593-RP |
| | § | |
| UTC PROVIDERS – AUSTIN, INC. D/B/A | § | |
| UTC HEALTH &REHAB – AUSTIN | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ROBERT PITMAN
       UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Rule 12(b)(6) Partial Motion to Dismiss Plaintiff's Claim under 42 U.S.C. § 1981 (Dkt. No. 20); Plaintiff's Response (Dkt. No. 24); and Defendant's Reply (Dkt. No. 25). The District Court referred the motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules.

### I. GENERAL BACKGROUND

Plaintiff Monica Cisneros worked as a "Massage Therapist/Rehab Technician" for Defendant UTC Providers – Austin, Inc. from July 2010 until she was terminated on August 4, 2016. Dkt. No. 23 at ¶ 9.[1] Cisneros' country of origin is Mexico and her native language is Spanish. Cisneros alleges in her Second Amended Complaint that she was placed on a Performance Improvement Plan on May 31, 2016, for speaking Spanish at work. Specifically, Cisneros alleges that the PIP stated that she had to be "mindful of those around you who cannot understand the languages you speak" and that "[o]ur patient and employees must feel comfortable in a medical environment and must

---

[1] The suit originally named "Union Treatment Center, LLC a/k/a UTC Health and Rehab and Union Treatment Center - Austin, LLC." The current defendant was substituted in place of that party after the suit was filed. Dkt. No.18.

never feel excluded. Please do not use other languages in front of patients or employees that you are unsure of their language capability." *Id.* at ¶ 10. Cisneros contends that she only spoke Spanish while at work to other Spanish-speakers. On or around July 25, 2016, a co-worker of Cisneros' signed a verbal warning form stating that "Monica Cisneros continue [sic] to violate the Rehab policy on speaking Spanish on the Rehab floor." *Id.* at ¶ 11. On August 4, 2016, UTC terminated Cisneros' employment.

On June 19, 2017, Cisneros filed this lawsuit alleging (1) discrimination on the basis of national origin in violation of Title VII; (3) discrimination on the basis of race in violation of 42 U.S.C. § 1981; and (3) discrimination on the basis of race in violation of Texas Labor Code § 21.001. UTC moves to dismiss Cisneros' claims under 42 U.S.C. § 1981 for failure to state a claim. It argues that Cisneros fails to state a viable race discrimination claim because she does not allege discrimination based on her ancestry or ethnic characteristics.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the

[movant] is liable for the misconduct alleged." *Id.* The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III. ANALYSIS

Cisneros' Amended Complaint alleges that UTC "intentionally discriminated against Plaintiff because of her race in violation of 42 U.S.C. § 1981 by unlawfully discharging her." Dkt. No. 23 at ¶ 20. Cisneros alleges that she was terminated for speaking Spanish at work and that the "decision to terminate her was motivated by her race." *Id.* Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. "Although § 1981 does not itself use the word 'race,' the [Supreme] Court has construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts." *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 609 (1987). Section 1981 applies only to claims of *race* discrimination and does not apply to claims based "solely on the place or nation of [one's] origin." *Udoewa v. Plus4 Credit Union*, 457 F. App'x 391, 392 (5th Cir. 2012) (quoting *St. Francis College* at 613). "Section 1981 ensures that all persons have the same right to make and enforce contracts, including the making, performance, modification, and termination of employment contracts." *Alvarado v. Shipley Donut Flour & Supply Co.*, 526 F. Supp. 2d 746, 753 (S.D. Tex. 2007).

3

To succeed on a § 1981 claim, a plaintiff must allege that (1) she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017), *cert. denied*, – S.Ct. – , 2018 WL 942520 (2018). "Although 'naked allegation[s]' of discriminatory intent are too conclusory to survive a motion to dismiss, discriminatory motive may be—and commonly is—demonstrated by circumstantial evidence." *Id.* (internal quotations omitted). The analysis of discrimination claims under §1981 is identical to the analysis of Title VII claims. *Id.*

UTC does not dispute that Cisneros has met the first and third factors; rather, UTC argues that Cisneros has failed to meet the second factor because she has not alleged sufficient facts to state a claim for race discrimination under § 1981. UTC argues that to constitute racial discrimination under § 1981 "the conduct alleged must be intentional and must be based on one's ancestry or ethnic characteristics." Dkt. No. 20 at 7. UTC contends that Cisneros' allegations "do not suggest discrimination on those grounds, but at best, allege that Plaintiff's termination may have been based on Plaintiff's conscious decision to speak in Spanish instead of English. This does not constitute race discrimination under Section 1981." *Id.* UTC contends that language is not an "immutable characteristic" and that "English Only" policies do not violate § 1981. It further argues that discriminating against an individual's language could never constitute race discrimination under the statute. Dkt. No. 25 at 2.

The Fifth Circuit has recognized that "[t]he line between national origin discrimination and racial discrimination is an extremely difficult one to trace" and in some contexts can be

4

"indistinguishable." *Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. 1981).[2] As the Southern District of Texas has noted "[a]lthough Section 1981 protects only against discrimination on the basis of race, and not national origin, the term 'race' is interpreted so broadly in the case law as to functionally include national origin discrimination." *Hammad v. Dynamo Stadium, LLC*, No. 2015 WL 6965215, at *11 n. 14 (S.D. Tex. Nov. 10, 2015).

In *Saint Francis College*, the Supreme Court attempted to clarify what constitutes race discrimination under § 1981. There, a professor filed a discrimination complaint against the university alleging he was denied tenure because of his national origin and religion in violation of Title VII and under § 1981. The district court ruled that the § 1981 claim was barred because § 1981 does not cover discrimination based on Arabian ancestry. The plaintiff appealed, and the Court of Appeals held that the plaintiff had asserted a claim for race discrimination under § 1981. The Supreme Court agreed, holding that discrimination based on the plaintiff's Arabian ancestry was discrimination based on race. The Court found that in enacting § 1981, "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics" and that "[s]uch discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory." *Id.* at 613. The Court further explained "[i]f respondent on remand can prove that he was subjected to intentional discrimination

---

[2]Thus, while discrimination purely on the basis of national origin does not create a cause of action under section 1981, the Fifth Circuit noted in *Bullard* that it had held that a complaint by Mexican-Americans alleging racial and ethnic discrimination "clearly states a cause of action" under the statute. *Id.* (citing *Alvarado v. El Paso Independent School District*, 445 F.2d 1011 (5th Cir. 1971)).

5

based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981." *Id.* In a concurring opinion, Justice Brennan noted that "the line between discrimination based on 'ancestry or ethnic characteristics,' and discrimination based on 'place or nation of . . . origin' is not a bright one." *Id.*

Several district courts have relied on the Supreme Court's reasoning in *Saint Francis* to find that discrimination based on an individual's accent or language can constitute race discrimination under § 1981. For example, in *Keeler v. Brenntag Specialties, Inc.*, 177 F. Supp. 3d 1021, 1021 (S.D. Tex. 2016), the plaintiff, who was born in Puerto Rico and spoke "with a noticeable accent," sued his former employer for race discrimination under § 1981. The employer had allegedly complained that a former salesperson was ineffective due to his thick accent and had told plaintiff he preferred salespeople born in the United States. Like UTC, the employer had argued that the facts alleged in the complaint regarding accent related to national origin, and not race. The plaintiff countered the facts fell within the Supreme Court's broad definition of race which includes "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Id.* at 1023. The plaintiff asserted that "his accent is a type of ethnic characteristic and, under *Saint Francis*, § 1981 prohibits discrimination based on ethnic characteristics." *Id.* After analyzing the Supreme Court's opinion in *Saint Francis College* and several other cases dealing with § 1981 and race, the district court found that the facts alleged in the complaint fell within the definition of race:

> Here, the court is considering a motion to dismiss as opposed to a motion for summary judgment, so it merely must determine whether it is plausible that the discrimination alleged in the complaint was not based solely on Keeler's place of birth and instead was based also on his ethnic background. Under this lenient

6

> standard, the court finds that it is plausible that the comment about the other sales representative's thick accent was based on racial animus.

*Id.* at 1025.

Similarly, in *Wesley v. Palace Rehab. & Care Ctr., L.L.C.*, 3 F. Supp. 3d 221, 226 (D.N.J. 2014), the plaintiff who spoke "with a thick Liberian accent" alleged that she was terminated from her employment on the basis of race in violation of § 1981. Plaintiff alleged that defendant told her that she would be terminated so that it could replace her with an Asian nurse who would "better relate" to the Asian patients. *Id.* at 233. Additionally, Plaintiff claimed that her supervisor told her that the defendant needed a nurse that the residents could understand at night, since there is no translator on duty during the night shift. *Id.* Defendant had moved for summary judgment arguing that plaintiff's allegations only showed at best discrimination based on national origin, which falls outside the scope of § 1981. The court denied the motion for summary judgment finding that Plaintiff had sufficiently alleged racial discrimination under § 1981:

> The context of Defendants' alleged statements regarding Plaintiff's communications skills—that they told her they wanted a nurse of a different race and then replaced her with nurses from that race—permits an inference that the statements were motivated by racial, rather than national origin animus. As a result, a reasonable fact finder could conclude that Plaintiff was terminated on the bases of her race and in favor of a member of a preferred race in violation of § 1981. . . .

*Id. See also*, *Conti v. Corp. Servs. Grp., Inc.*, 30 F. Supp. 3d 1051 (W.D. Wash. 2014), *aff'd*, 690 F. App'x 473 (9th Cir. 2017) (question of whether employer violated § 1981 by terminating Columbian native because his English-speaking skills were not adequate was issue for jury); *Andrews v. PRIDE Indus.*, 2017 WL 119803, at *13 (E.D. Cal. Jan. 12, 2017) (prohibition on employee's ability to speak Spanish could support a hostile environment claim); *E.E.O.C. v. Premier Operator Servs., Inc.*, 75 F. Supp. 2d 550, 558 (N.D. Tex. 1999) (defendants' enforcement of its

"Speak–English–Only" policy combined with the other evidence supported finding of intentional discrimination under Title VII); *Abdo v. Southern United Fire Ins. Co.*, 1994 WL 396305 at *3 (E.D. La. July 26, 1994) (denying motion to dismiss § 1981 claim where plaintiff alleged discrimination based on Latin name, ethnic background and the possibility he didn't speak or read English).

Accordingly, UTC's statement that English Only policies could never violate § 1981 is just plain wrong. In support of its theory, UTC quotes the Ninth Circuit's statement in *Olagues v. Russoniello*, 770 F.2d 791, 801 (9th Cir. 1985) (quoting *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973)), that "[u]nlike race, place of birth, or sex, language is not one of those 'immutable characteristic[s] determined solely by the accident of birth' which typically are the basis for finding a suspect class." *Olagues*, however, is not on point because it did not involve § 1981; rather, it was a case brought under the Voting Rights Act of 1965. The Ninth's Circuit's statement regarding language was in the context of determining whether the court should apply "heightened scrutiny" in the case. *Id.* The Ninth Circuit did not state that English only policies could never violate § 1981, and UTC's reliance on Olagues is misplaced.

UTC also relies on *Garcia v. Gloor*, 618 F.2d 264 (5th Cir.), *cert. denied*, 49 U.S. 1113 (1980), in support of its argument that English Only policies do not violate § 1981. In *Garcia*, a native-born American of Mexican descent brought suit under Title VII and § 1981 challenging his employer's rule prohibiting employees engaged in sales work from speaking Spanish on the job. On appeal, the Circuit held that the "speak-only-English" rule, *as it was applied* to Mr. Garcia by his employer, did not discriminate against him based on national origin. *Id.* at 266. The Court reasoned:

> We do not denigrate the importance of a person's language of preference or other aspects of his national, ethnic or racial self-identification. Differences in language and other cultural attributes may not be used as a fulcrum for discrimination.

8

> However, the English-only rule, *as applied by Gloor to Mr. Garcia*, did not forbid cultural expression to persons for whom compliance with it might impose hardship. . . . The evidence does not support a finding that the English-only rule had this effect on Mr. Garcia.

*Id.* at 270. Because this holding was clearly based on the particular facts of the case, it does not categorically rule out the possibility of an English only policy being applied in a way that does violate § 1981.

Indeed, the Fifth Circuit's holding the next year in *Vasquez v. McAllen Bag & Supply Co.* shows how difficult it is to make these distinctions, and that there is no bright line rule that English only policies can never violate § 1981. *Vasquez*, 660 F.2d 686 (5th Cir. 1981), *cert. denied*, 458 U.S. 1122 (1982). In *Vasquez*, a Spanish-speaking truck driver challenged his employer's English only policy under § 1981. After a bench trial on the § 1981 claim, the district court found that there was no evidence that the employer had the requisite discriminatory motive in instituting the policy. The Fifth Circuit affirmed the district court's ruling finding that the defendant's English only policy was supported by a legitimate, non-discriminatory reason and the plaintiff had failed to present evidence that the intent of the policy was to discriminate against Mexican-Americans. *Id.* at 688. Unlike *Garcia* and the rest of the cases[3] UTC relies on, the parties in this case have yet to conduct discovery and thus it is premature for the Court to inquire into "legitimate, non-discriminatory reasons" for UTC's actions. Accordingly, the Court is unable to determine at this early stage whether UTC's English Only policy and decision to terminate Cisneros was discriminatory.

---

[3] *See e.g., Pacheco v. New York Presbyterian Hosp.*, 593 F. Supp. 2d 599, 614 (S.D.N.Y. 2009) (denying summary judgment where plaintiff alleged that English only policy was discriminatory where plaintiff failed to offered enough evidence to dispute defendant's legitimate, non-discriminatory reason for the English-only policy); *Roman v. Cornell University*, 53 F.Supp. 2d 223 (N.D.N.Y. 1999) (same).

Cisneros' Amended Complaint alleges that UTC "intentionally discriminated against Plaintiff because of her race in violation of 42 U.S.C. § 1981 by unlawfully discharging her." Dkt. No. 23 at ¶ 20. Cisneros alleges that she was terminated for speaking Spanish at work and that the "decision to terminate her was motivated by her race." *Id.* Whether Cisneros can prove this claim at trial is still to be seen, but she has alleged sufficient facts to state a § 1981 claim *that is plausible on its face*, and that is all that is required at this juncture. *See Keeler*, 177 F. Supp. 3d at 1025 (holding that in considering motion to dismiss, court must merely determine whether claim is plausible and holding it is plausible that comment about thick accent was based on racial animus). Accordingly, Defendant's Rule 12(b)(6) Partial Motion to Dismiss Plaintiff's Claim under 42 U.S.C. § 1981 should be denied.

## IV. RECOMMENDATION

In light of the foregoing, the undersigned **RECOMMENDS** that the District Court **DENY** Defendant's Rule 12(b)(6) Partial Motion to Dismiss (Dkt. No. 20).

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from

10

appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 6th day of April, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE